JOHN WAYS, JR., APPELLANT, V. DAVE SHIVELY,
ELECTION COMMISSIONER, AND GARY LACEY,
COUNTY ATTORNEY, APPELLEES.
646 N.W.2d 621

Filed July 5, 2002. No. S-01-382.

Robert Wm. Chapin, Jr., for appellant.

Gary Lacey, Lancaster County Attorney, Michael E. Thew, and Douglas D. Cyr for appellees.

Don Stenberg, Attorney General, and Laurie Smith Camp for amicus curiae State of Nebraska.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Appellant, John Ways, Jr., brought this action seeking a writ of mandamus compelling appellee, Dave Shively, election commissioner of Lancaster County, Nebraska, to permit Ways to register to vote. The district court for Lancaster County denied Ways' petition for writ of mandamus and dismissed the petition. Ways has been convicted of a felony and is, therefore, not qualified to vote under Neb. Const. art. VI, § 2. Because Ways' right to vote has not been restored under Neb. Rev. Stat. § 29-112 (Reissue 1995), Ways has failed to show that he is entitled to vote and that Shively has a clear legal duty to permit Ways to register to vote. We affirm.

## STATEMENT OF FACTS

The relevant facts are not in dispute. Ways is a felon who was discharged from the Nebraska State Penitentiary in June 1998 after completing his sentences for the crimes of pandering, carrying a concealed weapon, and attempting to possess a controlled substance. Upon his release from custody, Ways was provided a certificate of discharge from the Department of Correctional Services, which provided, inter alia, as follows:

This document shall be evidence to all persons that the above captioned individual is finally discharged and restored all his/her civil rights, as provided by law, effective this 24th day of June, 1998.

The issuance of this Certificate of Discharge does not restore to the above captioned individual his/her right to bear firearms.

Following his release, Ways attempted to register to vote at the Lancaster County election commissioner's office. Shively

refused to allow Ways to register to vote, citing to § 29-112, which provides:

> Any person sentenced to be punished for any felony, when sentence shall not have been reversed or annulled, shall be deemed incompetent to be an elector or juror, or to hold any office of honor, trust, or profit within this state, unless such convict shall receive from the Board of Pardons of this state a warrant of discharge, in which case such convict shall be restored to his civil rights and privileges; *Provided*, such warrant of discharge shall not release such convict from the costs of his conviction, unless otherwise ordered by the Board of Pardons.

On February 27, 2001, Ways filed a petition for writ of mandamus, seeking a writ compelling Shively to permit Ways to register to vote. The petition was filed in the Lancaster County District Court. The district court scheduled a show cause hearing for February 28, ordering Shively to show cause why he ought not be compelled to permit Ways to register to vote in Lancaster County.

On February 28, 2001, the parties appeared at the show cause hearing. In support of his petition, Ways claimed that Shively's refusal to permit him to register to vote violated Neb. Rev. Stat. § 83-1,118(5) (Reissue 1999), which provides: "Whenever any committed offender has completed the lawful requirements of the sentence, the director [of the Department of Correctional Services] shall issue a certificate of discharge to the offender, and the certificate shall restore the civil rights of the offender."

Shively responded that as a result of Ways' felony conviction, the sentence for which had neither been reversed nor annulled, Ways had lost his right to vote and the only method by which Ways' right to vote could be restored was through a warrant of discharge issued by the Board of Pardons pursuant to the specific provisions in § 29-112. It is undisputed that no warrant of discharge had been issued. In further argument in response to Ways' claim, Shively stated that the rights encompassed by the certificate referred to under § 83-1,118(5) would be such "civil rights" as the right to "liberty" and the right to travel but that such rights did not include the right to vote. In sum, Shively claimed that Ways did not have the right to vote and that Shively was not under

any duty to permit Ways to register to vote. Shively requested that the district court deny Ways' petition for writ of mandamus.

The district court agreed with Shively's reasoning. On March 1, 2001, the district court entered an order denying Ways' request for writ of mandamus and dismissing his petition. Ways appeals.

## ASSIGNMENT OF ERROR

On appeal, Ways assigns one error. Ways claims the district court erred in concluding that § 29-112 controlled and in finding that Ways' voting rights had not been restored and dismissing his petition for writ of mandamus.

## STANDARDS OF REVIEW

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Chambers v. Lautenbaugh,* 263 Neb. 920, 644 N.W.2d 540 (2002); *In re Interest of S.B.,* 263 Neb. 175, 639 N.W.2d 78 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Chambers v. Lautenbaugh, supra.*

## ANALYSIS

*Constitutional Claim Not at Issue.*

As an initial matter, we note that the Attorney General's office has filed an amicus brief in this appeal on behalf of the State of Nebraska, asking that the district court's order be affirmed. The State argues, in part, that "[t]o the extent § 83-1,118(5) purports to restore to a convicted felon any civil rights which a felon forfeits by operation of statute or constitution," § 83-1,118(5) violates the Nebraska Constitution's separation of power provision found at art. II, § 1. Brief for amicus curiae at 1. The State argues that under Neb. Const. art. IV, § 13, a separate Board of Pardons within the executive branch has been established, which board is solely authorized to "remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment."

■ The constitutional issue raised by the State as amicus curiae on appeal was neither presented nor ruled on in the district court. We have stated that when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Adoption of Luke*, 263 Neb. 365, 640 N.W.2d 374 (2002). Accordingly, we do not consider the constitutional issue raised by the State.

*Requirements for Issuance of Writ of Mandamus.*
■ We have recently stated:
Mandamus is a law action and is defined as an extraordinary remedy, not a writ of right, issued to compel performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of the law. . . . The general rule is that an act or duty is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts.

*Sydow v. City of Grand Island*, 263 Neb. 389, 400, 639 N.W.2d 913, 922-23 (2002). See, also, *State ex rel. AMISUB v. Buckley*, 260 Neb. 596, 618 N.W.2d 684 (2000); *State ex rel. Cherry v. Burns*, 258 Neb. 216, 602 N.W.2d 477 (1999).

■ In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. AMISUB, supra.* Accordingly, Ways has the burden in the present case to demonstrate that he was entitled to register to vote and that Shively was legally obligated to permit him to register to vote.

*Ways Has No Clear Right to Register to Vote, and Shively Has No Duty to Permit Ways to Register to Vote.*
■ Ways was convicted of a felony and lost his right to vote under Neb. Const. art. VI, § 2, which provides: "No person shall

be qualified to vote . . . who has been convicted of [a] felony under the laws of the state or of the United States, unless restored to civil rights." The right to vote is a civil right, *Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964), and the restoration referred to in Neb. Const. art. VI, § 2, is the restoration of the right to vote. Restoration of the right to vote is implemented through statute.

The parties rely on different statutory provisions. This appeal presents a question of statutory construction. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute, considered in its plain, ordinary, and popular sense. *Heathman v. Kenney*, 263 Neb. 966, 644 N.W.2d 558 (2002). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* Furthermore, to the extent that there is a conflict between two statutes on the same subject, the specific statute controls over the general. *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). We have stated that " ' "[w]here general and special provisions of the statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same . . . ." ' " *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 472, 471 N.W.2d 398, 400 (1991).

When an offender convicted of a felony completes the requirements of his or her sentence, a certificate of discharge is issued to the offender by the Department of Correctional Services. We observe that by its terms, the "civil rights" restored by the certificate of discharge are only those civil rights "as provided by law." Section 83-1,118(5) authorizing the issuance of the certificate of discharge, uses the phrase "civil rights" but does not enumerate the rights included within such phrase. In particular, the statute does not address the restoration of the right to vote. Nevertheless, Ways claims that when the certificate of discharge was issued to him pursuant to § 83-1,118(5) in June 1998, the right to vote was one of the "civil rights" restored to him, and accordingly, Shively was obligated to permit Ways to register to vote. We do not agree.

 Ways' reliance on § 83-1,118(5), which refers to "civil rights" without specification, ignores § 29-112, which is the statutory provision directly addressing restoration of a felon's right to vote. Under § 29-112, a felon whose sentence has not been reversed or annulled may not vote "unless such convict shall receive from the Board of Pardons of this state a warrant of discharge." The purpose of § 29-112, as evident from its plain language, is to provide the mechanism by which a felon's right to vote is restored. Comparing §§ 83-1,118(5) and 29-112, it is clear that § 29-112 is the more specific statute relative to the restoration of a felon's right to vote, and, therefore, the specific statute, § 29-112, must control the conditions under which a felon's right to vote is restored.

There is no dispute that Ways' felony sentence has not been reversed or annulled and that Ways has not received a warrant of discharge from the Board of Pardons. Thus, we conclude as a matter of law that pursuant to § 29-112, the specific right to vote was not restored to Ways upon his discharge from incarceration at the completion of his sentences. The certificate of discharge issued under § 83-1,118(5) did not restore Ways' right to vote. See, generally, *State v. Illig*, 237 Neb. 598, 467 N.W.2d 375 (1991) (concluding, inter alia, that specific language of Neb. Rev. Stat. § 83-1,130(2) (Reissue 1987), which provided that Board of Pardons could restore right to possess firearms to person convicted of felony, controlled over more general language of Neb. Rev. Stat. § 29-2264 (Reissue 1989), which provided that upon completion of probation, convicted person's civil rights were restored, and, therefore, absent Board of Pardon's restoration of right to bear arms, person previously convicted of felony could be convicted of being felon in possession of firearm, in violation of Neb. Rev. Stat. § 28-1206(1) (Reissue 1989)). Ways did not have the right to vote restored, and Shively was not required to permit Ways to register to vote. The district court's order was correct.

## CONCLUSION

Ways was convicted of a felony and, therefore, not qualified to vote. His sentence was not reversed or annulled. The Board of Pardons has not issued a warrant of discharge. Because Ways'

right to vote has not been restored under § 29-112, Shively did not have a clear duty to permit Ways to register to vote. The district court did not err in denying Ways' petition for writ of mandamus. We, therefore, affirm the district court's order denying Ways' petition for writ of mandamus and dismissing the petition.

AFFIRMED.